## Richmond

W. G. BAPTIST v. R. R. SLATE, ADMINISTRATOR OF GRANT
FAULKNER, DECEASED.

March 22, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and
Chinn, JJ.

The opinion states the case.

*Hutcheson & Hutcheson* and *George R. Humrickhouse,* for the plaintiff in error.

*McKinney & Settle* and *Y. M. Hodges,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

An action by notice of motion was instituted by Slate, administrator, who will be referred to as the plaintiff, against W. G. Baptist, who will be referred to as the defendant, to recover damages for the wrongful death of Grant Faulkner which resulted from an automobile collision. The case was tried three times. The first and second trials resulted in mistrials. The third trial resulted in a verdict in favor of the plaintiff for $3,000.00 and judgment was entered thereon.

On June 6, 1931, Faulkner was driving his Ford touring car on the highway leading from Clarksville to Boydton. Ed Wade and Rosa Edmonds were accompanying him. At approximately nine o'clock at night his car collided with a car going in the opposite direction, owned by Baptist but driven by his daughter, Marjorie, who was seventeen years of age at the time. She had accompanying her, her uncle, a brother of the defendant, her mother, and three other ladies, all of whom were going to a dance. The road was straight and practically level from the point of collision in both directions for a considerable distance. According to the testimony of the plaintiff, Faulkner was driving his car on his right side of the road at from thirty to thirty-five miles per hour, while the young lady who was driving the defendant's car was approaching at about sixty miles per hour beyond the center of the road and partially on Faulkner's side. The car which was being driven by Faulkner was turned over on its side by the impact and moved about six feet, while the defendant's car traveled on beyond that point some sixty yards. The left front wheel of this car was broken down and it ran upon the brake drum or hub of the left front wheel, leaving its mark upon the highway from the point of collision for some sixty yards where it was brought to a complete stop. The imprint which was made by the left front hub or brake drum began at a point in the road on Faulkner's side thereof some two or three feet from the center line.

The defendant testified that he maintained the automobile which his daughter was driving upon this occasion for the use and pleasure of himself and the members of his family and who used it at will for their pleasure and convenience.

Faulkner was killed as a result of the collision and R. R. Slate qualified as his administrator.

The pleadings consisted of the notice of motion for judgment, a demurrer to the notice which was overruled, a plea of the general issue and an affidavit as required by statute denying that the defendant or any one for him

was operating or controlling the automobile at the time, a plea of contributory negligence and grounds of defense.

In the notice it was alleged that the defendant's car was being driven, at the time, at an excessive rate of speed and upon the left side of the highway for vehicles moving in the same direction as the defendant's car. It was further alleged that the defendant owned and maintained the car as a family car and the family purpose doctrine was invoked.

It is assigned that the verdict was contrary to the law and the evidence and was without evidence to support it.

■ The testimony offered for the plaintiff tended to establish the two grounds of negligence charged in the notice. Witnesses for the plaintiff, as has been stated, testified that the car of the defendant was being driven at the time at the rate of sixty miles per hour and upon the left of the center of the highway. This testimony was contradicted by the witnesses for the defendant. The testimony of the plaintiff further tended to show that the point of collision, indicated by the marks in the road of the hub of the left front wheel of the defendant's car, was on Faulkner's side of the highway. Some of them said the marks were as far as three feet on that side. This testimony was also contradicted, but from it, the jury were justified in finding their verdict establishing that the defendant's daughter was negligent in operating his car.

■ The question of Faulkner's contributory negligence was submitted to the jury and this was resolved against the defendant. We think the negligence of the driver of defendant's car and the contributory negligence alleged against Faulkner were jury questions and the verdict is conclusive of them.

It is by virtue of the family purpose doctrine alone that the plaintiff seeks to establish liability against the defendant. If this doctrine applies then the plaintiff is entitled to a recovery in the absence of prejudicial errors of law. On the other hand, if the doctrine does not apply

there can be no recovery for no other form of agency has been established.

The defendant earnestly urges that the family purpose doctrine has not been adopted in Virginia, and that such doctrine is not the law of this State. It is said that this court recognized the doctrine and applied it in a limited or qualified manner to the peculiar facts in the case of *Litz* v. *Harman,* 151 Va. 363, 144 S. E. 477, 481, but later in the case of *Green* v. *Smith,* 153 Va. 675, 151 S. E. 282, 283, repudiated it. It is also said that the recent case of *Oliver* v. *Simmons,* 161 Va. 294, 170 S. E. 583, neither recognizes nor adopts the doctrine.

In our opinion the family purpose doctrine was adopted in Virginia in the case of *Litz* v. *Harman, supra,* and the later case of *Green* v. *Smith, supra,* not only does not overrule the principles of the *Litz Case,* but recognized those principles. They were not applied because the facts in the *Smith Case* did not justify the court in doing so. Neither did the facts in the late case of *Oliver* v. *Simmons, supra,* warrant the application of the doctrine.

In *Litz* v. *Harman, supra,* Chief Justice Prentis stated the facts upon which liability was predicated in this language:

"The uncontradicted evidence is that the defendant owned the automobile which he kept for family purposes; that they drove it out frequently; that they used it for pleasure as well as business. One witness said that he had never seen the defendant driving it; that he spent a great deal of his time away from home; that some of the defendant's children drove it; and that the defendant did not keep a hired chauffeur. The testimony of the son of the defendant, who was driving the car at the time, is thus summarized on this point in the petition for the writ of error: 'That he was driving the car at the time of the accident and had been in the habit of driving the car; that some people who were at a camp near Tazewell wanted some groceries brought down there and asked his mother to bring them; and it was at her re-

quest that he took his mother and sister and got the groceries and drove down to the camp to deliever them, and on their return the accident happened; that the car was bought and maintained by his father partly for such errands; that at the time he was testifying he was twenty-two years old and at the time of the accident he lacked a few days of being twenty-one; that he had been down to camp near Tazewell to take some food to some girls there; that a boy by the name of Gillespie called up his mother and said that the people at the camp wanted some food and that his mother stated they would take it down; that his mother got the food at one of the stores; that his father did not know he was driving the car on that occasion, and that he was not on any errand or mission of any kind or business for his father.' "

After reviewing the authorities the opinion concludes: "The automobile was being used at the time by three members of the family of the defendant (wife, son and daughter) for the purpose for which it had been bought, under the implied authority of the defendant, so as to make his son, the driver of the machine, for the time being, his servant and agent. The doctrine of *respondeat superior* applies here under the conceded facts."

In *Green* v. *Smith, supra,* Epes, J., speaking for the court, said: "The family purpose doctrine which * * * has been applied in Virginia to the particular facts shown in the case of *Litz* v. *Harman,* 151 Va. 363, 144 S. E. 477, under which the head of a family is held liable for the negligence of members of his family while driving an automobile owned by him and kept for family purpose uses has no application to this case. There is no evidence in the record tending to show that the automobile here in question was kept by Sam P. Smith for family purpose use, or that the son had any general permission to use the car. On the contrary, such facts as do appear from the evidence warrant the inference that this automobile was not kept for family purpose use."

It is obvious that in the *Litz Case* the evidence justified

the application of the doctrine, while in the *Green Case* the evidence disclosed that the car was not a family car and was not kept for family purpose use. These cases were decided upon the peculiar facts as they appeared and they may be harmonized.

The reports contain so many cases on the family purpose doctrine that we think it only necessary to again quote from the case of *Litz* v. *Harman, supra,* where the general principles may be found:

" 'The rule has been said to rest on the view that where a father provides an automobile for the purpose of furnishing members of his family with outdoor recreation, the use of the car for such purpose is within the scope of the father's business analogously to the furnishing of food and clothing or ministering to their health.' Ann. Cas. 1917D, 1003, note.

*"Boes* v. *Howell,* 24 N. M. 142, 173 Pac. 966, L. R. A. 1918F, 288, is thus interpreted in R. C. L. Supp. vol. 3, 1094: 'A distinction is drawn in some cases between instances where the child was accompanied by other members of the family, or was driving the car alone. In the former instance it has been held that the father was liable, under the "family purpose" doctrine, for an injury caused by it while it was being occupied and used with his express or implied permission by members of his family, who were being driven by one of his children; at least, the point was emphasized that the car was kept for and habitually used by the members of the family.' *Van Blaricom* v. *Dodgson,* 220 N. Y. 111, 115 N. E. 443, L. R. A. 1917F, 365; 5 A. L. R. 226 (note).

"In Ruling Case Law, Supp., vol. 4, page 153, this is said as to the 'family purpose' doctrine: 'When the head of a family supplies an automobile for the use and pleasure of the family, permitting the members thereof to use it at will, those members thus using the automobile become the agents of the head of the family, and each one using it, even for his sole personal pleasure, is carrying out the purpose for which the automobile is furnished, and is

the agent or servant of the head of the family, so that the latter is liable for injuries resulting from negligence. This doctrine has been announced by the courts of Minnesota, Iowa, Georgia, Oklahoma, New Mexico, North Dakota, Wisconsin, Washington, Colorado, Montana, South Carolina and Tennessee; but application in its broadest sense has been refused in Arkansas, New York, Missouri, North Carolina, Maine, Alabama, Utah, New Jersey, Massachusetts, Virginia, Kansas, California, Ohio, Illinois, New Hampshire, Mississippi and Michigan. *Norton* v. *Hall,* 149 Ark. 428, 232 S. W. 934, 19 A. L. R. 384; *Fullerton* v. *United States Casualty Co.,* 184 Iowa 219, 167 N. W. 700, 6 A. L. R. 367.' "

In *Oliver* v. *Simmons, supra,* as already observed, this court did not apply the family purpose doctrine because the facts necessary for the application of the doctrine were not present, but nothing was said in the opinion in that case which could be considered as a repudiation of the position of this court formerly taken in the *Litz Case.*

Inasmuch as some uncertainty seems to exist as to whether the family purpose doctrine applies in Virginia, we deem it advisable at this time to remove such uncertainty regarding this subject and therefore we repeat that the doctrine has been adopted in this State and it will be applied in cases where the facts justify its application.

The rule which has been adopted is that the owner of an automobile, which has been purchased and maintained for the convenience, pleasure, and use of his family, and which the members of the family are permitted to use at will, is liable for their negligence in operating the automobile while it is being used by them for their own convenience, recreation, and pleasure, on the theory that the automobile was being used for the purpose or business for which it was purchased and maintained, and that the person so operating it was therefore acting as the owner's agent or servant. *Litz* v. *Harman, supra.*

In a very comprehensive note in 64 A. L. R. 845, the

annotator has collected the cases on this subject from many jurisdictions.

The next question is whether or not the doctrine applies to the evidence in the case at bar. The testimony of the defendant alone suffices to demonstrate beyond doubt that the automobile owned by him was used and maintained as a family purpose one. It will be necessary only to refer to his testimony. He stated when called as an adverse witness that the car was registered in his name; that the licenses were obtained in his name and had been obtained by him for several years; that he maintained the car for the use and benefit of the members of his family who were permitted to use it at their will and desire; that his daughter, Marjorie, who was driving it at the time of the accident was a member of his family and that she, as well as the other members of the family, used the car whenever they desired; that he did not keep the car for his daughter alone but for the entire family, and that it was a family purpose car. This testimony in and of itself meets every requirement of the family purpose doctrine and warrants its application here. It is difficult to conceive a case in which it could more strikingly apply.

But counsel for the defendant, more than a year after the collision, sought to file his own personal affidavit in which he stated in substance that the car did not belong to the defendant but that it belonged to his wife.

In the testimony of the defendant when he was called as an adverse witness, he stated, as we have just seen, that he maintained the car for family uses; that he had it registered in his name and for several years had procured the license in his name. In addition to this in his pleadings, grounds of defense and affidavit which he filed denying that he or his agent was operating the car at the time, he not only failed to state that he did not own the car but referred to it as his own and admitted that he owned it. When counsel offered to file his own affidavit denying ownership of the car, the trial court re-

fused to permit it to be filed. At the same time the trial court refused to permit the grounds of defense to be amended by inserting therein that the defendant did not own the car. More than a year having expired, when the affidavit of counsel was offered and when the amendment of the grounds of defense was sought, any attempt to institute an action against the wife of the defendant would have been subject to the bar of the statute of limitation.

From the foregoing it seems quite evident to us that the defendant did own the car and that the trial court very properly refused to permit the grounds of defense to be amended as requested, and properly refused to permit the affidavit of counsel to be filed.

Our conclusion is that the verdict and judgment are sustained by the evidence and that there is no merit in the assignment to set aside the verdict and reverse the judgment as being contrary to the law and the evidence.

A very short time after the collision Miss Marjorie, the driver of the defendant's car made a statement regarding the cause of the collision. She said, according to the testimony of Ed Wade, "that she was not as far out in the road as she thought she was, and the light blinded her." This testimony was admitted by the trial court as a part of the *res gestae,* over the objection of counsel for the defendant. The testimony shows that after the defendant's car was brought to a stop, the occupants got out and went back to the Faulkner car. Faulkner had been removed to the field on the side of the road and laid on the ground. Miss Marjorie and the others went over to the place where Faulkner had been laid and there according to Wade, in the presence of witnesses she made the statement referred to. We do not think the court went beyond a reasonable discretion in admitting this testimony. The statement followed very closely after the accident and bears no evidence of reflection or deliberation. It appears to have been spontaneous and un-

designed and was a part of the *res gestae*. *Washington-Virginia Ry. Co.* v. *Deahl*, 126 Va. 141, 100 S. E. 840.

Error is charged in the admission of certain expert testimony of automobile mechanics but we are not impressed with this point made by counsel for defendant. Our conclusion is that there was no prejudicial error in the admission of any of the evidence.

■ The court permitted the jury to view the Faulkner car and this is charged as error. Counsel claim that the ' car was not in the identical condition when the view was had as it was immediately after the collision and for that . reason a view should not have been permitted. We think the record sufficiently shows that the car was in the same condition at the time of the view as it was immediately after the collision and that there was nothing improper in allowing the jury to see the car.

We have examined the instructions and find them subject to no criticism. We think, however, fewer instructions would have lent clarity and avoided useless duplication.

Upon the whole we think the case has been fairly presented, tried and decided. The parties have had three trials of the case and in our judgment substantial justice has been reached.

The judgment is affirmed.

*Affirmed.*

HUDGINS, J., concurring.

While in *Litz* v. *Harman* the "family purpose" doctrine was discussed, the facts showed that at the time of the accident the minor son was using the automobile on busi-. ness for the father, which created the relationship of master and servant. The testimony of the defendant himself in this case warrants the conclusion that at the time of the accident the minor daughter of the defendant was driving the car on business of the father in taking the wife of the defendant, other members of his household and guests, to an entertainment. This created the rela-

tionship of master and servant between the father and daughter. I do not think that simply because a head of the family permits his children or other members of his household to use his automobile renders him liable in damages for their negligence while using the car for their business or pleasure. If the owner of a car knows his child is not a competent driver and permits such a child to use his car and while so doing the child negligently causes injury to another, he is liable for his own negligence.

For these reasons I concur in the conclusions reached in the majority opinion, though I am of opinion that the "family purpose" doctrine has not been adopted in Virginia. See *Cohen* v. *Meador,* 119 Va. 429, 89 S. E. 876; *Blair* v. *Broadwater,* 121 Va. 301, 93 S. E. 632, L. R. A. 1918-A, 1011; *Green* v. *Smith,* 153 Va. 675, 151 S. E. 282.

CAMPBELL, C. J., and EPES, J., join in the concurring opinion of HUDGINS, J.